UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JUSTIN GADBERRY,                          )
                                          )
    Plaintiff,                         )
                                          )
      v.                            )  No. 4:23CV1311  HEA
                                          )
JALESIA FRANKLINA McQUEEN  KUENZEL         )
and ANTHONY ALOYSIUS KUENZEL, III         )
                                          )
    Defendants.                        )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, [Doc. No 10]. Plaintiff opposes the Motion and has filed a written opposition thereto. Defendants have filed a Reply, and although leave was not sought nor granted, Plaintiff has filed a Sur reply. For the reasons set forth below, the Motion will be granted.

## Facts and Background

Plaintiff filed this action alleging the following:

Justin and Jalesia were previously married on September 2, 2005, in Cumberland County, North Carolina, and had two children born during their marriage, twin boys, Tristan McQueen Gadberry and Brevin McQueen Gadberry, born November 1, 2007, in St. Louis County, Missouri.

Justin and Jalesia subsequently divorced. A Judgment/Decree of Dissolution was entered on April 13, 2015, by the St. Louis County Circuit Court in Cause Number 13SL-DR06185.

Justin and Jalesia were awarded joint legal and joint physical custody of the minor children. Justin was ordered to pay child support to Jalesia pursuant to the dissolution judgment in the amount of $700.00 per month for the two minor children.

Justin has been current in his support obligations and paid all of his support payments on time as set forth in the dissolution judgment. Justin was paying more than the court-ordered amount for support in order to be of assistance to the family.

Jalesia was ordered by the family court to carry and pay for health insurance for the children but failed to do so. Justin began carrying coverage for the minor children.

Following the dissolution of their marriage, and pursuant to the dissolution judgment and parenting plan, Justin had liberal access to the minor children and significant periods of physical custody.

The dissolution judgment awarded to Justin and Jalesia jointly their two frozen embryos that were being stored by Fairfax Cryobank. It was ordered that

no transfer, release or use of the frozen embryos shall occur without the signed authorization of both Justin and Jalesia "due to the special character of [the] marital property."

Some time after the dissolution of Justin's and Jalesia's marriage, Anthony took up residence with Jalesia and the children and has resided with them since 2020.

Prior to 2020, consistent with a pattern of conduct, Jalesia would withhold from Justin his visitation rights, specifically stating as early as 2018 in an email to Justin, "There will be no visitation tomorrow. There is no easy way for me to say this, but the boys do not want to see you and I am supporting their choice because of a series of incidents they have told me about. I believe they are telling the truth about these incidents. Generally, they do not feel comfortable around you, do not feel safe and do not want to see you. I have suggested an over the phone conversation sometime this weekend so that they can explain their feelings to you. They have expressed their desire not to see you for the past year. Everytime (sic) it was your visitation, they would ask me if they had to go. I said yes, hoping things would get better. But it has not and after this past weekend, they do not want to be around you. I filed something with the court to ensure that Tristan and Brevin's best interest are covered with what they have described to me; but I am always willing to discuss what to do going forward. They are willing to talk to a GAL or

testify if need be to support the motion. My lawyers say they are old enough for that." At the time of the email, the minor children were 11 years of age. The motion referenced in said email was dismissed less than six months later by the court for Jalesia's failure to prosecute.

This behavior on the part of Jalesia is typical and was part of a pattern on her part to deprive Justin and the minor children of a father-child relationship and to alienate the children from their father.

Justin has been employed as a registered nurse since 2019.

Justin was deployed with the military, which was a known factor relating to his custody as it was specifically reflected in the state court's order for custody. Jalesia knew that Justin was working as a registered nurse and was attached with the military and often on active duty.

The fact that Justin began carrying insurance coverage for the minor children is indicative of Jalesia's knowledge of Justin's active duty status for the reason that Jalesia herself has a prior history of attachment to the miliary and that once Justin was deployed, his insurance went from Tricare Reserve Select to Tricare Prime for Active Duty. Jalesia had access to this enhanced coverage for the benefit of the minor children.

Justin was on active duty in July of 2022 and has remained so.

On July 11, 2022, Jalesia and Anthony petitioned the court in Jefferson County, Missouri, where Jalesia was acting as a judicial officer or preparing to become a judicial officer for the Jefferson County courts, for the adoption by Jalesia and Anthony of Justin's children, Tristan and Brevin, and termination of Justin's parental rights. In that petition, Jalesia and Anthony failed to disclose to the court that the children were the subject of the jurisdiction of another court, namely St. Louis County, and that there were existing court orders in that jurisdiction with respect to the minor children. Jalesia and Anthony both stated in that action, by way of sworn affidavit, that they believed Justin was employed by Barnes Jewish and that he lived in the City of St. Louis, but they made no effort or attempt at service of process of the adoption petition upon Justin, either at his last known residence or place of employment.

In their affidavits to the court, Jalesia and Anthony made reference to possibly locating Justin in the State of Florida, but no efforts were made to secure or even attempt service of process in the adoption proceedings upon Justin in the State of Florida.

Jalesia and Anthony further asserted that they "made several attempts by cellular communication and email and certified mail" to make contact with Justin. However, at no time did Jalesia or Anthony provide the court with any proof that

they attempted successful contact with Justin through any of these forms of communication.

At the same time that they made these representations, Jalesia and Anthony knew that Justin was deployed on active duty and that service of process would have been invalid under 50 USC §3901 and SMCRA.36. Jalesia and Anthony specifically informed an investigator that he "is in the Reserves and there is no reason for a deployment." This occurred when, according to their own exhibits to pleadings filed in the adoption proceedings, Jalesia and Anthony attempted to serve Justin with correspondence prior to filing their petition in court, presumably in an attempt to be able to "prove" to the court that they had made attempts to locate Justin. As a result, Justin was unaware that a petition for adoption had been filed, as Jalesia continued to receive and cash child support checks sent to her from Justin. Justin had been making regular support payments under the dissolution judgment directly to Jalesia, even though custody and visitation of the minor children had been withheld from Justin.

As a result of the misleading conduct and the actions of Jalesia and Anthony, a Judgment and Decree of Adoption was entered by the family court in Jefferson County, Missouri, on September 27, 2022, which terminated all parental rights of Justin to his children and found that the minor children be the children or Jalesia

and Anthony and ordered the children's names to be changed to Tristan Falcon McQueen Kuenzel and Brevin Viper McQueen Kuenzel. At the time of the entry of the adoption judgment, minor children were 14 years of age.

In another proceeding, specifically in the family court of St. Louis County, Missouri, a motion to modify was filed by Jalesia on February 27, 2023, wherein she indicated that "Plaintiff has not practiced his custody or visitation time with the minor children in over 4 years" and that her "new Husband has adopted the minor children in Case No. 22JE-JU00300." For this action, Jalesia used a different attorney because she knew that she purposely omitted salient and necessary facts to the court in the adoption matter.

In that motion to modify in the St. Louis County court case, Jalesia sought an order that she be awarded the physical custody, care, and control over the frozen embryos of Jalesia and Justin, indicating that she has and her "new Husband are committed to maintaining the life of said embryos and to providing financially for any subsequent born children without any obligation from [Justin]."

Justin learned of these actions and filed a motion to set aside and vacate the adoption judgment in the Jefferson County, Missouri.

When Justin undertook an investigation into these matters, he became aware that Jalesia and Anthony had undertaken a course of action designed specifically to

deprive Justin of his rights as a parent and to take control of marital property awarded to him under the dissolution of marriage judgment (the frozen embryos).

Plaintiff's Complaint allege three counts: Civil Conspiracy under 18 U.S.C. § 1962(d), Count I; Intentional infliction of emotional distress, Count II; and Violation of the Service Members Civil Relief Act pursuant to 50 U.S.C. § 3901.

Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants claim Count I fails to state a claim and that it pleads no predicate violation of §§ 1692(a), (b), or (c) to which any purported conspiracy applied. Further, Defendants urge Count I fails to allege any facts which, even if true, constitute at least two predicate acts which are delineated in the RICO statute. Finally, with respect to Count I, Defendants argue it fails to plead facts with particularity demonstrating either a pattern of criminal activity or proximate harm resulting from a violation of RICO.

As to Count II, Defendants urge dismissal due to Plaintiff's failure to allege intentional infliction of emotional distress that was extreme and outrageous or that it resulted in bodily harm to Plaintiff.

Defendants move to dismiss Count III based on a failure to identify any facts which demonstrate damages directly and proximately resulting from the claimed violation of the Service Members Civil Relief Act.

Defendants further cite the *Rooker-Feldman* Doctrine, the *Younger* Abstention Doctrine, and the Domestic Disputes Exclusion to preclude the Court's exercise of jurisdiction.

## Discussion

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction. Such a challenge can be either facial or factual in nature. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

Regardless of whether the jurisdictional attack is facial or factual, the plaintiff has the burden of proving subject matter jurisdiction. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev*., 235 F.3d 1109, 1112 (8th Cir. 2000). Under a facial attack, the court generally "restricts itself to the face of the pleadings*," Jones v. United States*, 727 F.3d 844, 846 (8th Cir. 2013) (quoting *Osborn*, 918 F.2d at 729 n.6), but it may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned ... without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (internal quotations and citation omitted); see also *Jones*, 727 F.3d at 846

(acknowledging "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)" (citation omitted)).

In contrast, where a factual attack is made on the court's subject-matter jurisdiction, because "its very power to hear the case" is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," without transforming the motion into one for summary judgment. *Osborn*, 918 F.2d at 730 (citation omitted); *see also Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988) ("When a challenge is to the actual subject matter jurisdiction of the court, as opposed to the sufficiency of the allegation of subject matter jurisdiction[,] ... the district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction.").

In a factual attack on a court's jurisdiction, "the court considers matters outside the pleadings, and the non-moving party does not have the benefit of [Rule] 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n.6 (internal citation omitted). Therefore, in deciding a factual challenge to subject matter jurisdiction, the court need not view the evidence in the light most favorable to the non-moving party. See id. at 729 n.6, 730.

The challenge to subject matter jurisdiction in this case is facial in that it attacks Plaintiff's allegations and matters of the state court proceedings, *i.e.* matters of public record.

"[F]ederal courts are courts of limited jurisdiction." *United States v. Afremov*, 611 F.3d 970, 975 (8th Cir. 2010). This Court "has a special obligation to consider whether it has subject matter jurisdiction in every case." *Hart v. United States,* 630 F.3d 108, 1089 (8th Cir. 2011). "This obligation includes the concomitant responsibility to consider sua sponte the Court's subject matter jurisdiction where the Court believes that jurisdiction may be lacking." *Id*. (cleaned up) (quoting *Clark v. Baka*, 593 F.3d 712, 714 (8th Cir. 2010) (per curiam)). Under 28 U.S.C. § 1331, federal district courts have jurisdiction over cases arising out of federal law, including federal statutes and the United States Constitution. *Cagle v. NHC Healthcare-Maryland Heights, LLC*, 78 F.4th 1061, 1066 (8th Cir. 2023). Under 28 U.S.C.§ 1332, diversity jurisdiction, federal district courts have jurisdiction over cases which arise between citizens of different states.

Plaintiff invokes federal question jurisdiction under 28 U.S.C. § 1331 by alleging  RICO,  U.S.C. 42 § 1961(d) and Service Members Civil Relief Act, 50 U.S.C.§ 3901 violation and 28 U.S.C. § 1332 by setting out Plaintiff is a citizen of Florida and Defendants are citizens of Missouri.

Ordinarily, alleging federal question and diversity jurisdiction would confer subject matter jurisdiction on this Court. However, alleging federal question jurisdiction is not always enough to establish a court's power to hear a case because other bars to jurisdiction may exist. See, e.g., *Rooker v. Fidelity Tr. Co*., 263 U.S.

11

413 (1923) (describing a district court's lack of appellate jurisdiction over state-court rulings); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983) (same). Defendants argue that the *Rooker-Feldman* doctrine bars jurisdiction over this action.

The *Rooker-Feldman* doctrine takes its name from two decisions of the Supreme Court of the United States: *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine holds that " 'only the United States Supreme Court has been given jurisdiction to review a state-court decision,' so federal district courts generally lack subject-matter jurisdiction over 'attempted appeals from a state-court judgment.' " *Friends of Lake View Sch. Dist. 25 v. Beebe*, 578 F.3d 753, 758 (8th Cir. 2009) (quoting 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4469 (2d ed. 2002)). The *Rooker–Feldman* doctrine "applies to cases brought by state-court losers complaining of injuries caused by state-court judgments ... and inviting review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284, 287 (2005). Here, it appears the state court previously adjudicated the rights and obligations of these parent litigants with respect to the adoption of their minor child. The *Rooker-Feldman* doctrine applies not only to direct appeals, but also to federal actions alleging "general constitutional claims that are 'inextricably intertwined' with specific

12

claims already adjudicated in state court." *Lemonds v. St. Louis Cnty.*, 222 F.3d 488, 492–93 (8th Cir. 2000) (quoting *Feldman*, 460 U.S. at 482 n.16); see also *Prince v. Ark. Bd. of Exam'rs in Psych.*, 380 F.3d 337, 341 (8th Cir. 2004) ("Once a party has litigated in state court ... he 'cannot circumvent *Rooker-Feldman* by recasting his or her lawsuit as a [section] 1983 action.' " (quoting *Bechtold v. City of Rosemount*, 104 F.3d 1062, 1065 (8th Cir. 1997) (second alteration in original))). The state and federal constitutional claims are "inextricably intertwined" if the federal claim succeeds only upon a determination that the state court wrongly decided the issue before it. *Lemonds,* 222 F.3d at 493.

The Eighth Circuit uses a four-part test to determine whether a federal action violates *Rooker-Feldman*: (1) plaintiff must have lost in state court, (2) plaintiff complains of injury arising from the state court judgment, (3) the action invites the district court to review and reject the state court ruling, and (4) the state court decision was rendered prior to the federal court action. *Fochtman v. Hendren Plastics, Inc.*, 47 F.4th 638, 643 (8th Cir. 2022) (explaining the circumstances in which the doctrine applies); *Christ's Household of Faith v. Ramsey Cnty.*, 618 F. Supp. 2d 1040, 1044 (D. Minn. 2009) (numbering the doctrine as a four-part test); see also *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The elements of the *Rooker-Feldman* doctrine apply to Plaintiff's adoption claim. First, Plaintiff lost in the adoption proceeding when the Court granted the adoption petition.

Second, Plaintiff directly complains of injuries arising from granting the adoption. Although Plaintiff claims he is not challenging the State Court ruling, but rather the acts leading up to the ruling, his claim in essence is seeking a review of the ultimate decision and that as a result of the adoption proceeding, his rights have been violated through the alleged RICO actions of Defendants. Very clearly, the injuries alleged—the constitutional deprivations and RICO violations—arise from the actions the defendants took in obtaining the state-court order.

Third, the requested relief invites this Court to "review and reject" the prior state-court order in violation of the *Rooker-Feldman* doctrine. See *Fochtman*, 47 F.4th at 643; Exxon Mobil, 544 U.S. at 284. To remedy the unconstitutional conduct he allegedly suffered, Plaintiff asks this Court for damages that resulted from the adoption proceeding. Granting the requested relief would require this Court to determine whether the sanctions violate Plaintiff's constitutional rights, which would necessitate review of the underlying adoption.

The fourth and final requirement for the Rooker-Feldman doctrine to apply is that the state court order was rendered before Plaintiff initiated the present on October 17, 2023. The Judgment and Decree of Adoption was entered by the State

14

Court on September 27, 2022. Accordingly, *the Rooker-Feldman* doctrine applies to Plaintiff's claim as it relates to the adoption, including Plaintiff's SCRA claim. See *Brown v. Lewis*, 361 F.App''x 51, 53 (11th Cir. 2010)(SCRA claims filed challenging an adoption proceeding under the SCRA while the Plaintiff was deployed barred by *Rooker-Feldman)*. This Court lacks subject matter jurisdiction over the action and must dismiss it.

Additionally, federal courts lack jurisdiction over domestic relation matters such as the issuance of divorce, allowance of alimony or child custody; this is known as the domestic relations exception to federal jurisdiction which has been recognized for more than 180 years. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (distinguishing a family tort claim from a child custody claim). State courts have exclusive jurisdiction over these matters. Id., at 703-704. See also, *Brown* 361 F.App''x at 53.

Even if this court could properly exercise jurisdiction, it would abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971) as applied by *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982). The Supreme Court has made clear that lower federal courts must decline to hear challenges to pending state actions involving important state interests. See *Moore v. Sims,* 442 U.S. 415, 435 (1979) ("[f]amily relations are a traditional area of state concern."); *Lewis v. Seventh Cir. Ct. - S.D. Unified Jud. Sys*., 2018 WL 7247048,

at \*3 (D.S.D. Nov. 28, 2018) (explaining that domestic relations is "a traditional area of state concern where federal abstention is particularly important").

Here, there is an ongoing domestic proceeding in St. Louis County Circuit Court regarding Plaintiff and Defendant Jalesia's frozen embryos which implicates important state interests and that state proceeding provides an adequate opportunity to raise all manner of challenges, including constitutional ones. *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004).

With respect to Plaintiff's attempt to allege a RICO violation, even if Plaintiff's claims were not barred as stated *supra*, the RICO claim cannot withstand challenge.

Plaintiff purports to allege a RICO claim against Defendants. Section 1962 of the RICO Act makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir.2009) (quoting 18 U.S.C. § 1962(c)). The federal RICO statute "provides a private right of action for any person injured in his business or property by reason of [a RICO violation]." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir.2011) (internal quotation marks and citation omitted); 18 U.S.C. § 1964(c). To

demonstrate a RICO violation, the plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crest Constr. II, Inc.*, 660 F.3d at 353 (internal quotation marks and citation omitted). In order to prove the last two elements, a plaintiff must demonstrate that the defendant committed at least two predicate acts of racketeering which are delineated in the statute. 18 U.S.C. §§ 1961(1), (5).

For predicate acts of racketeering, Plaintiff alleges Defendants committed perjury and related false statements under 18 USC §§ 1621 and 1623 and under § 575.040 RSMo.; mail fraud and the use of the mail to engage in fraudulent activity under 18 USC § 1341; tampering pursuant to 18 USC §§ 1512(a)(1)(A), 1512(b)(2)(B), and 1512(c)(1)(2); obstruction pursuant to 18 USC § 1505; conspiracy to commit an offense or defraud the United States by willful violations of SMCRA under 18 USC § 371; and offenses against the administration of justice under § 575.500 (false affidavit) and under § 575.060 (false declaration).

Defendants contend that Plaintiff's RICO claim fails because it does not state the essential elements of a RICO claim. Because the Court finds that Plaintiff did not allege a "pattern of racketeering" Plaintiff's RICO claim fails.

By statute, the "pattern" element requires a plaintiff to show at least two predicate acts of "racketeering activity," which is defined to include violations of specified federal laws, such as the mail and wire fraud statutes. See 18 U.S.C. §

1961(1)(B),(5). "Although showing two predicate acts is the only statutory requirement, case law establishes that this is not sufficient to prove a 'pattern'—the plaintiff also must demonstrate that the 'predicates are related, and that they amount to or pose a threat of continued criminal activity.' " *Efron v. Embassy Suites (Puerto Rico), Inc*., 223 F.3d 12, 15 (1st Cir.2000)(quoting *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989)); see also *Sutherland v. O'Malley*, 882 F.2d 1196, 1203 (7th Cir.1989); see *Craig Outdoor Adver., Inc., v. Viacom Outdoor, Inc*., 528 F.3d 1001, 1028 (8th Cir.2008)("[T]o prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.") (emphasis in original). RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.' " *Crest Const. II, Inc*, 660 F.3d at 353 (citing *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir.2006)).

Defendants argue that Plaintiff fails to plead a pattern of racketeering activity. Assuming for the sake of argument Plaintiff has sufficiently stated the required predicate acts, Plaintiff fails to delineate how Defendants' actions demonstrate they will continue to engage in a pattern of this activity absent the limited area in which their actions occurred, *i.e.*, Plaintiff's claims are limited to their actions regarding the domestic issues in the State Court. Plaintiff cannot state

a claim under RICO because it has failed to allege the necessary pattern of racketeering activity. The Court acknowledges that under *H.J.* a single scheme can constitute a RICO claim, the "single scheme must still meet the requirements of relatedness and continuity." *Terry A. Lambert Plumbing, Inc*., 934 F.2d at 981; *Larry Good & Associates v. Williams & Co. Consulting*, 2006 WL 3257180, at * 2 (D.Neb. Nov. 9, 2006) ("The Company must allege a pattern of racketeering activity to show continuing activities and distinct schemes in excess of a single injury, which is more than garden variety fraud."). "A single 'scheme' may be reached by RICO, see *H.J. Inc*., 492 U.S. at 240–41, 109 S.Ct. 2893, but only if it is reasonably broad and far reaching." *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 105 (1st Cir.2002). "[W]hile acknowledging *H.J.*'s teaching, ... a number of courts since that decision have found the continuity prong to be absent for allegations involving unlawful activities too small in scale or scope." *AB Mauri Food, Inc. v. Harold*, 4:07CV811–DJS, 2008 WL 878451, at *3 (E.D.Mo. Mar. 27, 2008)(citing *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C.Cir.1995). The Eighth Circuit has reasoned that " 'it places a real strain on the language [of RICO] to speak of a single fraudulent effort, implemented by several fraudulent acts, as a pattern of racketeering activity.' " *Associated Petroleum Producers, Inc. v. Treco 3 Rivers Energy Corp*., 692 F.Supp. 1070,

1072 (E.D.Mo.1988) (quoting *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986)).

Although Plaintiff has alleged that Defendants engaged in multiple fraudulent acts, the Court holds that Defendants' actions are insufficient to establish a pattern of racketeering because they were, at most, performed as part of a single effort to defraud Plaintiff. The alleged predicate acts do not allege that Defendants acted in regard to any other victims, nor do they allege a threat of continued fraudulent activity. Plaintiff has alleged merely a "narrow criminal episode," even if Defendants' actions may constitute several injuries. *Sys. Mgmt., Inc.*, 303 F.3d at 105; *Larry Good & Associates*, 2006 WL 3257180, at *2 (citing *Madden v. Gluck*, 815 F.2d 1163, 1163 (8th Cir.1987))("Injury resulting from mere subdivisions of one fraudulent scheme is not sufficient to form a pattern of racketeering activity."). There is no allegation that Defendants' fraud or alleged racketeering activity will continue as to Plaintiff or that Defendants' activities threatened or will threaten any other victim. See *H.J. Inc.*, 492 U.S. at 240 ("To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity.") (emphasis in original). This case involves only one set of perpetrators, one victim and one fraudulent goal. "Viewing the complaint in the light most favorable to the plaintiff, this case involves, at most, a plan to defraud a single

company in connection with a single contract." *Larry Good & Associates*, 2006 WL 3257180, at *3 (dismissing RICO civil claim).

Plaintiff has not addressed Defendants' challenge to his intentional infliction of emotional distress' lack of claim that Defendants' actions resulted in physical damage.

To plead a claim of intentional infliction of emotional distress under Missouri law, a plaintiff must allege: "(1) the defendant [acted] intentionally or recklessly; (2) the defendant's conduct [was] extreme and outrageous; and (3) the conduct [caused] (4) severe emotional distress." *Pujols v. Pujols Fam. Found.*, No. 4:16-CV-1644-CAS, 2017 WL 4310436, at *8 (E.D. Mo. Sept. 28, 2017), aff'd, 721 F. App'x 567 (8th Cir. 2018) (citation omitted). To satisfy the first factor, the conduct must have been "intended only to cause extreme emotional distress to the victim." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. 1997) (citation omitted). To satisfy the second factor, the conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*.

> The theory of intentional infliction of emotional distress has been developed through the courts in order to permit recovery in cases in which defendant has committed "extreme and outrageous conduct" causing "severe emotional distress that results in bodily harm." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997). Not just any wrongful conduct is a sufficient predicate for the tort. Rather, the conduct "must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Id*. And, importantly here, it is an essential element of the tort that "[t]he conduct must be 'intended only to cause extreme emotional distress to the victim.' " *Id*. (emphasis added) (quoting, K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996)).

*Thomas v. Special Olympics Missouri, Inc*., 31 S.W.3d 442, 446 (Mo. Ct. App. 2000). Plaintiff's claim fails to meet the elements of intentional infliction of emotional distress.

### Conclusion

Based upon the foregoing analysis, Plaintiff's Complaint fails to sufficiently set forth claims giving rise to this Court's jurisdiction and fails to sufficiently allege claims upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. No. 10], is **GRANTED**.

Dated this 16th day of September,  2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE